**HORNING WIRE CORPORATION, an Illinois corporation, Plaintiff–Appellant,**

v.

**The HOME INDEMNITY COMPANY, Defendant–Appellee.**

No. 93–1317.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1993.

Decided Oct. 29, 1993.

588

Thomas P. Stepanich, Conzelman, Snarski & Stepanich, Waukegan, IL (argued), for plaintiff-appellant.

Henry R. Daar (argued), Steven B. Fisher, Kostow & Daar, Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, CUMMINGS and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

The Horning Wire Corporation uses cresylic acid in its manufacturing process. The solvent is stored in six underground tanks located on Horning Wire's property and is transported to Horning Wire's plant via underground pipelines. In June 1989, the company discovered that cresylic acid was leaking from one of its pipelines. Recognizing the environmental danger (and accompanying liability),[1] it hired a waste-removal contractor, which removed approximately 900 cubic yards of contaminated soil from Horning Wire's property. The cleanup cost Horning Wire almost $240,000. The company then

---

1. Under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607 (1988), the owner of a "facility" is liable for damages resulting from the release of any "hazardous substance." Under this statute, a "pipe or pipeline" is considered a "facility." *Id.* at § 9601(9)(A).

CERCLA's definition of a "hazardous substance" incorporates the definition of "hazardous waste" under the Resource Conservation and Recovery Act (RCRA). *Id.* § 9601(14)(C). Cresylic acid is a "hazardous waste." *See* 40 C.F.R. § 261.33 (1992).

sought reimbursement in this amount from its insurance carrier, Home Insurance Co.

Yet when Home Insurance asked Horning Wire to document its loss, Horning Wire inexplicably stalled. Only after three requests and seven months did Horning Wire finally supply the insurance company with the requested documentation. It was then Home Insurance's turn to delay. After entering into a "non-waiver agreement" with Horning Wire, it took Home Insurance nine months to decide that Horning Wire was pressing a claim for damage to land, and that the policy expressly excluded such damage from its coverage. On March 5, 1991, Home Insurance told Horning Wire that it was denying coverage for the claim.

Horning Wire thereafter brought this action in Illinois state court. Home Insurance (from whom Horning Wire is diverse) removed the matter, pursuant to 28 U.S.C. § 1441(a), to the district court. The magistrate judge (to whom the district court, with the parties' consent, assigned the matter) entered summary judgment in favor of Home Insurance. Horning Wire, as 28 U.S.C. § 636(c)(1) allows, brings this appeal, claiming that it should be entitled to proceed to trial on three theories: (1) breach of contract, (2) waiver and estoppel and (3) Illinois statutory causes of action. Because none of these theories provides Horning Wire with a cause of action against Home Insurance, we affirm.

### I. Breach of Contract

▮ The 23–page insurance policy, whose terms control this action, provides that:

This policy insures except as hereafter provided:

**A. Real property**

Against all risks of direct physical loss or damage from any external cause to all real property ...

Three pages later, the policy continues:

**Exclusions**

Insurance shall not apply

    \*    \*    \*    \*    \*    \*

3. Under [Coverage A] to the following property and perils ...

a. To trees, shrubs, plants and lawns, except as provided in the Extensions of Coverage[,] nor to land, growing crops and standing timber ...

▮ Horning Wire claims that this language is ambiguous and contradictory. In truth, it is neither. Illinois law, which governs this action, makes clear that insurance policies are contracts, and should be interpreted as such. *Dempsey v. National Life & Accident Ins. Co.,* 404 Ill. 423, 88 N.E.2d 874, 876 (1949). Where the language of an insurance contract is clear and unambiguous, courts do not hesitate to give full effect to its provisions. *Kirk v. Financial Sec. Life Ins. Co.,* 75 Ill.2d 367, 368, 27 Ill.Dec. 332, 389 N.E.2d 144, 145 (1978). While ambiguities in insurance policies are to be construed in favor of the insured, *United States Fire Ins. Co. v. Schnackenberg,* 88 Ill.2d 1, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981), courts should not invent ambiguities where none exists. Doing so, Illinois courts have uniformly held, provides the insured with greater coverage than she actually purchased. *See Western Casualty & Sur. Co. v. Brochu,* 105 Ill.2d 486, 86 Ill.Dec. 493, 497–498, 475 N.E.2d 872, 876–77 (1985); *Smiley v. Estate of Toney,* 100 Ill.App.2d 271, 241 N.E.2d 116, 120 (1968), *aff'd* 44 Ill.2d 127, 254 N.E.2d 440 (1969).

▮ Horning Wire's argument is that the provision insuring damage to "real property" is in conflict with the separate provision excluding "land" from the policy's coverage. The argument continues that conflicting language is ambiguous, and ambiguities ought to be read to favor the insured. *Pohrer v. Title Ins. Co. of Minnesota,* 652 F.Supp. 348, 353 (1987). If "an insurance contract contains inconsistent or conflicting clauses, the clause which affords greater or more inclusive benefit for the insured will govern." *Standard Mut. Ins. Co. v. General Casualty Companies,* 171 Ill.App.3d 758, 121 Ill.Dec. 658, 662, 525 N.E.2d 965, 969, *appeal denied* 122 Ill.2d 594, 125 Ill.Dec. 237, 530 N.E.2d 265 (1988).

Horning contends that it is inconsistent and conflicting to insure "real property" but to exclude "land." But land is merely a

subset (though admittedly a big one) of the broader category of real property. Real property includes "interests in things attached to land as well as land itself." Roger A. Cunningham, et al., *The Law of Property* § 14, at 13 (1984). Buildings, fixtures, natural vegetation and (sometimes) cultivated crops are all considered to be real property. *Id.*

The exclusion for land is therefore an exception to the general coverage for damage to real property. "Exceptions to statutes, regulations, common law rules and constitutional tests are of course everywhere in the law." Frederick Schauer, *Exceptions*, 58 U.Chi.L.Rev. 871 (1991). So too for insurance policies. This policy, in essence, covered Horning Wire's building. While doing so by providing coverage for all real property—and then excluding all real property except the building—may be (perhaps unnecessarily and annoyingly) indirect and circuitous, it is neither inconsistent nor conflicting.

The only claim that Horning Wire made on its insurer was for the costs it incurred as a result of the damage to its land. Because the policy unambiguously excludes land from its coverage, Horning Wire cannot maintain a breach of contract action against Home Insurance for its failure to pay this claim.

## II.   Waiver and Estoppel

Horning Wire also argues that Home Insurance, by virtue of the delay, (1) waived its right to deny coverage, and (2) should be estopped from doing so. Both of these arguments fail. Waiver involves the intentional relinquishment of a known right. A waiver can be implied or express. An insurer's conduct, as well as its words, can give rise to a waiver. *National Discount Shoes v. Royal Globe Ins. Co.*, 99 Ill.App.3d 54, 54 Ill.Dec. 263, 267, 424 N.E.2d 1166, 1170 (1981). But Horning Wire fails to point to any words or actions that manifest Home Insurance's intention to waive its right to enforce the policy's exclusion for damage to land. To the contrary, the parties entered into a "non-waiver agreement" that expressly permitted Home Insurance to conduct a "full investigation" of the accident without "estoppel, waiver, or forfeiture" of any of its rights.

Nor is Home Insurance estopped from denying coverage. To establish an estoppel, an "insured must show that it was in some manner misled by the acts or statements of the insurer or its agents; that the insured relied on this conduct or representation . . . and that the insured was prejudiced thereby." *Florsheim v. Travelers Indem. Co.*, 75 Ill.App.3d 298, 30 Ill.Dec. 876, 882–83, 393 N.E.2d 1223, 1229–30 (1979) (citations omitted); *see also Schoonover v. American Family Ins. Co.*, 214 Ill.App.3d 33, 157 Ill. Dec. 794, 801, 572 N.E.2d 1258, 1265 (1991), *appeal denied* 141 Ill.2d 560, 162 Ill.Dec. 508, 580 N.E.2d 134 (1991). Because Horning Wire makes no claim that it was misled or that it was prejudiced, Home Insurance cannot be estopped from denying coverage.

## III.   Statutory Causes of Action

Horning Wire finally asserts two causes of action arising under Illinois statutory law. It points first to 215 ILCS 5/155, which authorizes a court to award attorney's fees and penalties in cases where the court concludes that an insurance company's delay was vexatious and unreasonable. The magistrate—in denying Horning Wire's claim under this statute—found that "Horning has not demonstrated that Home Indemnity exercised bad faith in its investigation and the ultimate denial of Horning's claim." Mem. Op. at 15. While on appeal Horning Wire argues that the question whether Home Insurance's delay was "vexatious and unreasonable" is a question of fact to be left to the jury, this argument ignores the plain language of the statute, indicating that fees may be awarded where "it appears *to the court* that such . . . delay is vexatious and unreasonable." 215 ILCS § 5/155 (West 1992) (emphasis added). Horning Wire is therefore not entitled to have a jury decide whether it is entitled to attorney's fees under the Illinois code.

Horning Wire also argues that under the Illinois Unfair Claims Practice Act, 215 ILCS §§ 5/154.5–154.8 (West 1992), it has a cause of action arising out of Home Insurance's alleged bad faith dealing. This

argument is also meritless, since the Unfair Claims Practice Act provides "no private cause of action or remedy beyond those powers given to the State Director of Insurance." *Van Vleck v. Ohio Casualty Ins. Co.*, 128 Ill.App.3d 959, 84 Ill.Dec. 159, 161, 471 N.E.2d 925, 927 (1984). Horning Wire, therefore, has no cause of action against Home Insurance under either of these sections of the Illinois code.

Because Horning Wire has no cause of action against Home Insurance under any of the theories it puts forward, the order of the district court, granting summary judgment in favor of the defendants, is AFFIRMED.