Grasso, J.
The plaintiffs, Tricentennial Eagle Limited Partnership {“Tricentennial”) and Chartwell Properties Corporation (“Chartwell”), brought this action against the defendants, The Bankers Standard Insurance Company (“Bankers Standard”) and Cigna,[1] seeking damages for the alleged breach of an insurance contract entered into by the parties. Bankers Standard now moves, pursuant to Mass.R.Civ.P. 56, for summary judgment, which motion is opposed by Tricentennial and Chartwell. After hearing and the Court’s consideration of the written submissions of the parties, Bankers Standard’s Motion for Summary Judgment is ALLOWED.
BACKGROUND
It is undisputed that Tricentennial obtained a policy of insurance, No. GPP D17112612 (the “Policy”), from Bankers Standard. The Policy covered property and loss of rents at the Eagle Can Building, 7 First Avenue, Peabody, Massachusetts for the period July 15, 1989 to July 15, 1990.
In October or November 1989, tenants of the Eagle Can Building complained to Chartwell of an unusually high volume of heating oil being used to heat the building. Following these complaints, Chartwell hired Sommer Environmental Technologies (“Sommer”) to conduct a visual and physical inspection of the property to determine whether there was a fuel oil leak. Sommer took soil and groundwater samples from the property in November 1989, and January 1990. On November 29, 1989, tests on the first four samples revealed various levels of contamination in three of the four borings. The contamination was reported to the Department of Environmental Protection (“DEP”) on November 30, 1989. Subsequent tests indicated extensive soil and groundwater contamination at the 7 First Avenue site.
On March 5, 1990,[2] Tricentennial and Chartwell filed a claim for coverage under their Policy with Bankers Standard for damage to land and groundwater due to the failure of an oil return line on an underground storage tank. On March 9, 1990, Bankers Standard acknowledged receipt of the claim and began an investigation into the facts and circumstances. See Letter from Bankers Standard to Alan Ball dated March 9, 1990.
On November 6, 1990, Bankers Standard informed Tricentennial and Chartwell that their Policy did not provide coverage for the claimed damage to land and *368 groundwater. Specifically, Bankers Standard indicated to Tricentennial and Chartwell that
[t]he damages that resulted from faulty installation of the pipe did not damage any property insured by this policy. The oil which was contained within the pipe, which ultimately leaked into the ground, is considered personal property. As I previously stated, the coverage afforded by this policy was for real property and loss of rent only. There was no coverage provided for contents or personal property.
See Letter from Bankers Standard to Alan Ball dated November 6, 1990.
Tricentennial and Chartwell then filed this action against Bankers Standard seeking damages for the alleged breach of their insurance contract.
DISCUSSION
This Court should grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56. The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the moving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts . . .” LaLonde v. Eissner, 405 Mass. 207, 209 (1989) (citing Community Nat’l Bank v. Dawes, 369 Mass. at 554). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Vague and general allegations of expected proof are not enough to defeat a motion for summary judgment. Cherella v. Phoenix Technologies Ltd., 32 Mass.App.Ct. 919, 920 (1992).
Suit Limitation
Citing G.L.c. 175, §99,[3] Bankers Standard first asserts that it is entitled to summary judgment where Tricentennial’s action, which was filed after the expiration of the Policy’s suit limitation provision, is untimely. Tricentennial and Chartwell contend, however, that the suit limitation provision upon which Bankers Standard relies is applicable only to fire insurance policies and not to first-party property policies such as the one at issue. Tricentennial and Chartwell further maintain that where the language of the endorsement relied upon by Bankers Standard violates G.L.c. 175, §22, the endorsement is void and plaintiffs’ suit is subject to the six-year statute of limitations for contract actions set forth in G.L.c. 260, §2.
Determination of whether the suit limitation provision of G.L.c. 175, §99 bars this action involves a two-pronged inquiry: (1) whether such statutory limitation applies to first-person property policies such as the one at issue; and (2) whether the provisions of G.L.c. 175, §99, upon which the Policy endorsement at issue is based, violate the terms of G.L.c. 175, §22.
The parties do not dispute that the policy at issue contains an addendum entitled Massachusetts Mandatory Endorsement.[4] It is further undisputed that the Massachusetts Mandatory Endorsement provides, in pertinent part:

Appraisal and Suits against Us

The APPRAISAL and SUITS AGAINST US provisions of IN CASE OF PROPERTY LOSS are replaced by the relevant provisions of the Massachusetts Standard Fire Policy contained in this endorsement.
See Policy issued by Bankers Standard to Tricentennial and Chartwell at B00238. Under the heading Massachusetts Statutory Conditions, The endorsement further provides that
No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred . . .
See Policy issued by Bankers Standard to Tricentennial and Chartwell at B00241. Tricentennial and Chartwell maintain, however, that the §99 suit limitation provision contained in their Policy applies only to fire insurance policies and is not applicable to the first-party property claims they assert. Citing Gallant v. Federal Mut. Ins. Co., 354 Mass. 146 (1968), and Ames Privilege Ass’n Ltd. v. Allendale Mut. Ins. Co., 742 F.Sup. 700 (D.Mass. 1990), Bankers Standard contends, on the other hand, that the suit limitation provision applies to plaintiffs’ first-parly property policy.
In Ames, supra, the United States District Court for the District of Massachusetts applied an identical suit limitation provision to bar suit where plaintiffs property was damaged by rotting structural supports. 742 F.Supp. at 702-04; accord Roxse Homes Inc. v. Commerce and Ind. Ins., 570 F.2d 26 (1st Cir. 1978) (construing cancellation provisions of §99 in an all-risk policy). The Supreme Judicial Court also applied the suit limitation provision found in §99 to damage caused when a motor vehicle struck an insured build *369 ing. Gallant, 354 Mass. at 147 and n.2. Accordingly, the Court finds that the §99 suit limitation provision is not limited to fire insurance policies and applies to plaintiffs’ first-party property policy.
The parties do not dispute that “. .. §99, in limiting actions to two years from the time the loss occurs, limits them to less than two years from the time the cause of action accrues." Goldsmith v. Reliance Ins. Co., 353 Mass. 99, 102 (1967) (emphasis added). Tricentennial and Chartwell contend, however, that the G.L.c. 175, §99 suit limitation provision in their first-party property policy is void in that it violates G.L.c. 175, §22. Section 22 provides, in pertinent part:
No company and no officer or agent thereof shall make, issue or deliver any policy of insurance . . . containing any condition, stipulation or agreement . . . limiting the time for commencing actions against it to a period of less than two years from the time when the cause of action accrues ... Any such condition, stipulation or agreement shall be void.
The Supreme Judicial Court has explicitly held, however, that the limitation of §99 is not void by reason of §22. Goldsmith, 353 Mass. at 102. Reconciling the apparent inconsistency between §99 and §22, the Goldsmith Court stated that “(t]he limitation provision of §99 may be construed to be effective by confining §22 to nonstatutory limitations, that is, to those settled upon solely by the parties to the insurance policy, as opposed to those directed by the legislature.” Id.; Cf. Barton v. Automobile Ins. Co., 309 Mass. 128 (1941) (construing suit limitation provision in nonstandard form policy). Following Goldsmith, supra, the Court finds that the suit limitation provision set forth in G.L.c. 175, §99 is not void by reason of §22 and is applicable to the case at bar. Accordingly, where Tricentennial and Chartwell did not file suit against Bankers Standard until March 5, 1996, more than six years after the loss occurred and more than three years after the expiration of the §99 suit limitation provision in their policy, Bankers Standard’s Motion for Summary Judgment is ALLOWED.
Covered Property
Assuming arguendo that the suit limitation provision of §99 does not bar this action, the Court finds a separate and distinct basis for allowing Bankers Standard’s motion. The property claimed to be damaged, land and groundwater, is not covered property under the Policy. Citing Mellon v. Hingham Mut. Fire Ins Co., 19 Mass.App.Ct. 933, 934 (1984), Tricentennial and Chartwell maintain that an all-risk insurance policy, such as the one at issue here, is intended to insure against all fortuitous events, not just fire losses. Tricentennial and Chartwell further argue that where none of the exclusions in the Policy fit the specific facts of their case, the damage to soil and groundwater at the Eagle Can Building is covered.
Land
The parties do not dispute that, under the heading Real Property That Is Covered, the Policy issued to Tricentennial and Chartwell covers “buildings, structures and other real property at covered locations.” See Policy issued by Bankers Standard to Tricentennial and Chartwell at B00198. “Real property” is defined in the policy as “land and generally anything built or' growing on land.” Id. at B00232. It is further undisputed that, in a section entitled Real Property That Is Not Covered, the Policy expressly excludes “land” from coverage. Id. at B00198.
Citing Horning Wire Corp. v. The Home Indemnity Co., 8 F.3d 587 (7th Cir. 1993), Bankers Standard maintains that where the Policy clearly excludes land from coverage, plaintiffs claimed damage to land (soil) is not covered by the Policy. There, the Court of Appeals held that, where the policy expressly excluded land from coverage, the insurer did not breach the policy when it denied coverage for the environmental costs incurred by the insured in removing contaminated soil from its property. Id. at 589-90. Tricentennial and Chartwell do not dispute the existence of the land exclusion in their Policy. Instead, citing USM Corp. v. First State Ins. Co., 420 Mass. 865 (1995), they argue that the exclusion is ambiguous, presents an inherent contradiction in the policy, and should be construed in their favor. The Court finds, however, that the language of the Policy is neither ambiguous nor contradictory. “This policy, in essence, covered [plaintiffs’] building. While doing so by providing coverage for all real property and then excluding all real property except the building — may be (perhaps unnecessarily and annoyingly) indirect and circuitous, it is neither inconsistent nor conflicting.” Horning Wire Corp. v. The Home Indemnity Co., 8 F.3d 587, 589-90 (7th Cir. 1993).
Groundwater
Citing Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 633 N.E.2d 1235, 1243 (Ill.App. 1 Dist. 1994), Tricentennial and Chartwell argue that where the land exclusion in the Policy does not exclude coverage for damage to groundwater, Bankers Standard is required to pay Chartwell for the costs incurred to remediate the groundwater at the insured location. Bankers Standard points out, however, that Lapham-Hickey Steel Corp., supra, has been reversed by the Illinois Supreme Court. See Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 655 N.E.2d 842 (Ill. 1995). In addition, Bankers Standard asserts that where groundwater is not included in the Policy definition of “real property,” see Policy issued by Bankers Standard to Tricentennial and Chartwell at B00232, groundwater is not covered under the first-party property portion of the Policy.
This Court rules that where: (1) there is no mention of groundwater under the section of the Policy entitled Real Property That Is Covered; and (2) the Liability *370 portion of the policy refers to damage to the property, including land and groundwater, of third parties, the Policy does not cover damage to groundwater at the covered location.
ORDER
For the foregoing reasons, Bankers Standard’s Motion for Summary Judgment is ALLOWED.

 Plaintiffs’ Complaint seeks recovery against the Bankers Standard Insurance Company and Cigna. Where Cigna is merely a tradename and Bankers Standard is the issuing carrier, however, the Court will refer to the defendants collectively as Bankers Standard.

 Bankers Standard contends that it was notified of plaintiffs’ claim for insurance coverage on March 7, 1990.

 Section 99 provides, in pertinent part, that
[n]o suit or action against this company for recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred.
G.L.c. 175, §99, Twelfth (emphasis added).

 Tricentennial and Chartwell suggest that there is a question of fact before the Court concerning their receipt of the endorsement at issue. Where plaintiffs submitted, as part of Louis Massery’s affidavit, a true and accurate copy of the policy (including the endorsement), however, the Court finds no evidence that plaintiffs did not receive the endorsement along with their policy.