**RIVERDALE MILLS CORP. and James M. Knott, Plaintiffs,**

v.

**FIREMAN'S FUND INSURANCE CO., Defendant.**

**No. CIV.A.98–CV–40104–NM.**

United States District Court, D. Massachusetts.

Dec. 1, 2000.

Warren G. Miller, Boston, MA, for Plaintiffs.

Gregory P. Varga, John E. Tener, Robinson & Cole, Boston, MA, Gerald J. Nielsen, Metairie, LA, Stimpson B. Hubbard, Philip T. Tierney, Finnegan, Underwood, Ryan & Tierney, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this action to recover on a property insurance claim, the defendant, Fireman's Fund Insurance Company ("Fireman's"), has filed a Motion for Partial Summary Judgment (Docket No. 20). The Plaintiffs oppose the motion.

### I. Background

Plaintiff, James M. Knott, is the owner of the corporate plaintiff, Riverdale Mills Corporation ("Riverdale"), an industrial mill complex that produces wire mesh and electricity. Knott and Riverdale will be collectively referred to as "the Plaintiffs." The mill complex occupied by Riverdale is located on the west bank of the Blackstone River and on the southern edge of Riverdale Pond. A 600–foot long dam on the north side of the mill complex restrains Riverdale Pond from the mill complex and a roadway known as Riverdale Street passes along the top of the dam.

Three underground tunnel structures known as "sluiceways" extend beneath the mill complex from north to south. The sluiceways are commonly referred to as the eastern sluiceway, the central sluiceway and the western sluiceway. This action concerns only the central sluiceway.

In April, 1996, the Blackstone River valley experienced heavy rains which caused the level of Riverdale Pond to rise precipitously. On April 5, 1996, the Plaintiffs raised the headgates of the central sluiceway in an effort to lower the level of water in Riverdale Pond and to prevent flooding of Riverdale Street and the mill complex.

As a result of property damage and income losses stemming from the raising of the headgates of the central sluiceway on April 5, 1996, the Plaintiffs submitted a claim to Fireman's seeking indemnity under a property insurance Policy ("the Policy") that Fireman's issued to the Plaintiffs in November, 1995. The Policy was effective from November 1, 1995 through November 1, 1996. The Plaintiffs sought compensation for damages to the mill complex and loss of sales of electricity sustained while the property damage was repaired.

Following an investigation of the loss and claim, Fireman's denied coverage under the Policy by a letter dated May 8, 1998. On May 19, 1998 the Plaintiffs filed a complaint in the Massachusetts Superior Court for Suffolk County, which case was subsequently removed to this Court on June 10, 1998.

The Plaintiffs seek indemnity for (1) the cost of repairing the central sluiceway, (2) the cost of repairing the sinkhole in Riverdale Street, (3) the estimated cost of repairing the walls of the mill complex, (4) the cost of repairing the floor and wall of the central tailrace, (5) the cost of filling the void beneath the mill complex and resetting the support post on the first floor and (6) loss of profits associated with the repairs already undertaken. The Plaintiffs appear to associate all of those damages with a loss that occurred on April 5, 1996.

Pending before this Court is Fireman's Motion for Partial Summary Judgment (Docket No. 20) to which Plaintiffs have filed an Opposition and Fireman's a Reply.

## II. Discussion

### A. Summary Judgment Standard

In accord with Fed.R.Civ.P. 56(c), summary judgment must be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c); *Magee v. United States,* 121 F.3d 1, 3 (1st Cir.1997).

A genuine issue is one which a reasonable fact finder could resolve in favor of the nonmoving party. *Id.* Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (internal quotations omitted).

Once the moving party has demonstrated that no genuine issue of material fact exists, the burden of production shifts to the nonmovant to contradict the demonstration by coming "forward with specific provable facts which establish that there is a triable issue." *Matos v. Davila,* 135 F.3d 182, 185 (1st Cir.1998). The role of a summary judgment motion in general "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Coyne v. Taber Partners I,* 53 F.3d 454, 457 (1st Cir.1995).

### B. Analysis

1. **Whether the claim for property damage and loss of income is time-barred because it was not filed within the two-year statute of limitations**

   Property insurance policies written on risks in Massachusetts must adhere to a standard form set forth in M.G.L. c. 175, § 99. That standard includes a two-year statute of limitations which provides, in pertinent part:

No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred . . . .

M.G.L. c. 175, § 99.

Fireman's contends that any suit relating to the property and income losses the Plaintiffs' sustained from the April 5, 1996 flood should have been filed on or before April 5, 1998. Because the Plaintiffs did not file suit until May 19, 1998, their suit is, according to Fireman's, time-barred with respect to the claims of property damage and loss of income attributable to the events of April 5, 1996.

The Plaintiffs contend that Fireman's is estopped from relying on the statute of limitations because it (1) continued to investigate the loss during the limitations period, (2) wrote, in a January 1998 letter to its agent, Sullivan Agency, that it had not yet determined whether the Policy provided coverage for the April 5, 1996 losses and (3) did not mail its notice of the denial of coverage until May 12, 1998, more than one month after the date Fireman's alleges the Plaintiffs should have filed suit.

Under Massachusetts law, the essential factors giving rise to estoppel are (1) a representation, or conduct amounting to a representation, intended to induce a course of conduct on the part of the person to whom the representation is made, (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made, and (3) a detriment to such person as a consequence of the act or omission. *Turnpike Motors, Inc. v. Newbury Group, Inc.*, 413 Mass. 119, 123, 596 N.E.2d 989 (1992). In addition, the reliance of the party asserting estoppel must have been reasonable. *Id.* at 125, 596 N.E.2d 989.

In this case, the Plaintiffs do not appear to satisfy the first requirement of estoppel.

The statement made by Fireman's in its January, 1998 letter to the Sullivan Agency to the effect that Fireman's had not yet decided whether its Policy covered the Plaintiffs' loss was not a representation calculated to induce the Plaintiffs to forego suit during the two-year statute of limitations period. If that statement were construed to be such a representation, insurance companies would be unduly hindered in their ability to communicate candidly the status of the investigation of a claim without fear of waiving critical terms and conditions of a Policy.

Furthermore, the continuation of the investigation of the claim by Fireman's during the limitation period and the denial of the claim thereafter do not constitute conduct sufficient to estop Fireman's from relying on the two-year limitation. *See Gallant v. Federal Mutual Insurance Co.*, 354 Mass. 146, 235 N.E.2d 810 (1968) (insurers who conducted a routine investigation, signed non-waiver agreements with the insureds, engaged in discussions which did not involve company offers or promises of settlement, and denied the claim one month after the statute of limitations had run were not estopped from relying on that limitations period).

In this case, the Plaintiffs make no allegations that Fireman's investigation was not routine or that Fireman's offered to settle the claim. Moreover, on June 27, 1997, the parties signed a non-waiver agreement which provided that any action taken by Fireman's in investigating the April 5, 1996 flood loss would not serve to waive or invalidate any rights of either party to the agreement. That agreement plainly established the intent of the parties to maintain their rights under the Policy.

Because the Plaintiffs have not successfully argued that Fireman's should be estopped from relying on the two-year statute of limitations, Fireman's motion for partial summary judgment on the part of the Plaintiffs' claim relating to property damage and loss of income from the April 5, 1996 flood will be allowed.

## 2. Whether the damage to the central tailrace and the ensuing loss of income are recoverable

The Plaintiffs seek to recover for damages (1) to the central tailrace (part of the central sluiceway), (2) to a support column and (3) for lost profits associated with the repair of the central tailrace. At the time of the April 5, 1996 flood, the walls and the ceiling of the central tailrace consisted of an arch made of granite blocks. The floor consisted of wooden planks placed in a north-south direction along the length of the tailrace, with the planks fastened to beams which spanned the width of the tailrace.

In May 1997, a vertical wooden support column standing between the first and second floors of the mill complex sank into the floor. Upon inspection, the Plaintiffs discovered that soil had been removed from beneath the floor, leaving a void in its place, that a large amount of soil had been deposited inside the central tailrace and that certain granite blocks of the tailrace arch had settled approximately three to four inches.

After the May, 1997 incident, the Plaintiffs drained Riverdale Pond so as to keep the central tailrace dry during its repair and restoration. That condition prohibited them from generating electricity with the hydroelectric turbine for about five months. The Plaintiffs seek to recover the costs of repairing the central tailrace and the support column and lost profits associated with those repairs.

The Policy's "Covered Causes of Loss" are defined as "all risks of direct physical loss or damage ... provided such loss or damage occurs during the term of this policy ...." Because the damage to the central tailrace occurred in May, 1997, and not during the term of the Policy (November 1, 1995 to November 1, 1996), Fireman's contends it is not obligated to compensate the Plaintiffs for such damage.

The provision of the Policy entitled "Business Income with Extra Expense Coverage" provides coverage for, *inter alia,*

the actual loss of Business income ... which [the insured] sustain[s] due to necessary suspension of operations during the period of restoration [and that] [t]he suspension must be caused by direct physical loss or damage ... caused by or resulting from a covered cause of loss.

Fireman's asserts that because the damage to the central tailrace occurred in May, 1997, after the term of the Policy, profits lost while it was repaired are not covered.

A genuine issue of material fact exists as to whether the damage to the central tailrace resulted from the April 5, 1996 washout. A reasonable jury could find from lay testimony about the existence of damage to the central tailrace in April, 1996 and from expert testimony about the effects of the washout on other areas of the mill that the sinking of the column in May, 1997 resulted from the April 5, 1996 flood. For this reason, Fireman's is not entitled to summary judgment on the issue of damages to the central tailrace or lost profits resulting from its repair.

However, assuming that the damages to the central tailrace occurred on April 5, 1996, as the Plaintiffs contend, neither those damages nor the related lost profits are recoverable under the Policy because the subject suit was not filed within the applicable statute of limitations period.

Fireman's has filed a motion for *partial* summary judgment, but because this Court finds that the operative date of loss for the damages to the central tailrace and ensuing lost profits is April 5, 1996, the statute of limitations is dispositive of the entire case. Fireman's is, therefore, entitled to summary judgment on all claims and the entire action will be dismissed.

### ORDER

For the foregoing reasons, Fireman's motion for partial summary judgment

(Docket No. 20) is treated as a motion for summary judgment on the entire case and is **ALLOWED**. This action is **DISMISSED**.

So ordered.