Fecteau, J.

INTRODUCTION

This is a first-party claim by the plaintiff, Rock of Salvation Pentecostal Church, Inc. (“the plaintiff’), upon a Massachusetts fire insurance policy issued by the defendant, GuideOne Insurance Company (“the defendant”), for a fire that occurred on March 5, 2001. The plaintiff made a claim for losses under the building and contents coverage of said policy that has been resolved. However, as a part of said loss, the plaintiff now seeks additional damages under “code upgrade” coverage, i.e., upgrades in the reconstruction as a result of municipal code enforcement. The defendant has moved for summary judgment pursuant to Rule 56 of the Massachusetts Rules of Civil Procedure, on the ground that the above-captioned action was filed on July 15, 2003 after the statutory, per G.L.c. 175, §99, and contractual two-year policy limitations period had run.
For reasons which follow, and as argued by the defendant in its memorandum in support of its motion, the defendant’s motion for summary judgment is ALLOWED.

BACKGROUND

The following facts are taken as undisputed and in the light most favorable to the plaintiff, the nonmoving party.
The plaintiff is a religious organization that owns a church located at 829 Main St., Worcester, Massachusetts. On March 5, 2001, a fire damaged the church.
At the time of the fire, the church had property coverage for the building and its contents, as well as subsidiary coverages through an insurance policy issued by the defendant. The Massachusetts Changes portion of the insurance policy provides in pertinent part:
We will not pay on a replacement cost basis for any loss or damage: (1) until the lost or damaged property is actually repaired or replaced: . . . and (2) Unless the repairs or replacement are made within a reasonable time, but no more than 2 years after the loss or damage . . .
Your policy contains LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions. Massachusetts law requires that the Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy supersede any similar provisions contained in your policy. Therefore, all LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions contained in your policy are void. The Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy shall apply instead . . .
Appraisal. In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss . . .
Suit. No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties . . .
Additionally, the Commercial Property Conditions portion of the policy provides, in relevant part:
No one may bring a legal action against us under this Coverage Part unless: ... 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.
The plaintiff brought a three-part claim for the fire loss, seeking recovery for: damage to the building; damage to the contents; and additional expenses incurred by the plaintiff for loss of use of the building. Payments for additional expenses ceased in April 2002, and the plaintiff made no further claim under the additional expense coverage.
The building claim involved several issues: (1) whether the building was underinsured so that a coinsurance penalty might apply; (2) what the actual cash value and what the replacement cost was for the damage that actually occurred; and (3) to what extent, if at all, the additional building coverage for “code upgrades” would be involved in the claim. The parties failed to agree on the amount owed on the building claim. As a result, the building claim was referred to a reference panel.
The three-member panel held a hearing on August 20 and 22, 2002. Both parties presented testimony *521 and documentation to the referees concerning the amount of the loss. Several people who testified during the hearing mentioned and/or were asked about code upgrades and whether code upgrades were included in the estimates and appraisal documentation that was prepared for the parties and presented to the reference panel. At the end of the day on August 20, 2002, Gordon Feener (“Feener”), plaintiffs counsel, asked the panel Chairman if they were going to suspend. The Chairman responded, “Sure. We will suspend until the 22nd.”
At the end of the day on August 22, 2002, both parties and the referees discussed the scope of the referees’ charge. One of the referees asked the parties, “What you want us to do is replacement cost, depreciation and ACV on the building? . . . And on the loss?” Counsel for both parties responded, “Correct.” The Chairman of the panel confirmed that the referees would not be doing any co-insurance calculations because the parties had not yet determined whether co-insurance would apply to the coverage. Brad Sharp (“Sharp”), representing the defendant, then asked if the panel would be estimating contents, at which point one of the referees responded that they had not been asked to. Feener stated, “We have not asked them and we have not reached an agreement with respect to that.” The Chairman informed the parties they could keep the panel in place, which prompted the following dialogue:
Feener: Are you suspending at this point?
Chairman: What?
Feener: We can suspend at this point to be reconvened should it become necessary.
Chairman: Well, you can keep it contingent upon the parties agreeing or disagreeing on the content and we can come up with a building value.
Feener: Sure.
Chairman: If you want to keep the panel in place because of the disadvantage of the — or you can give a timeframe. If there is a potential disagreement on the contents within a particular timeframe, it comes back to this panel.
Feener: Correct.
Chairman: And then at that time we will have to go out and look at whatever we can look at.
Feener: Okay?
Sharp: Fair enough.
Feener: Anything else? Then, Mr. Chairman, I guess it is up to you to suspend this reference.
Chairman: This reference is suspended.
Reference Hearing Transcript, August 22, 2002, pgs. 257-58 (emphasis added).
The referees made an award on September 11, 2002. The decision was communicated to the plaintiff on September 16, 2002. The defendant mailed the award payment to the plaintiff on October 14, 2002, within the thirty-day requirement.
In October of 2002, the parties addressed the unresolved contents claim and agreed on a settlement. A Proof of Loss was filed prior to March 5, 2003 and paid shortly thereafter.
The reference panel was never reconvened, and neither party ever requested that it be reconvened.
On March 5, 2003, the statute of limitations ran with respect to the fire loss.
In early April 2003, Feener called the defendant’s adjuster and inquired about a claim for “code upgrades.” The defendant’s adjuster was traveling when he received the call and did not have the file with him, but he agreed to review the matter when he returned to the office. Feener followed up the phone conversation with a letter to the adjuster, dated April 4, 2003, stating in part, “(t]his will confirm our most recent conversation in which you indicated that at some point next week you will be providing to our client, the requirements that they must meet in order to make claim for their code upgrades.” Upon returning to the office and reviewing the file, the defendant’s adjuster realized the limitations period had run. He wrote Feener a letter, dated April 13, 2003, stating no further claims would be considered. The plaintiff filed the current suit on July 15, 2003.

DISCUSSION

I. Standard of Review
Summaiy judgment is appropriate when no material facts are in dispute, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of demonstrating affirmatively both the absence of triable issues and its entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summaiy judgment who would not bear the burden of proof at trial may demonstrate the absence of triable issues by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). To overcome a summary judgment motion, the nonmoving party must articulate specific facts establishing the existence of general issues of material facts. Pederson, 404 Mass, at 17. Mere assertions of the existence of disputed facts without evidentiary support cannot defeat a summary judgment motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
It is well-settled that the interpretation of an insurance contract is a question of law for the court. Kelleher v. Am. Mut. Ins. Co. of Boston, 32 *522 Mass.App.Ct. 501, 503 (1992). “Like all contracts, insurance contracts are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed.” Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 (1982) (citations omitted). “A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms.” Cody, 387 Mass, at 146 (citations omitted).
II. Statute of Limitations
The defendants move for summary judgment on the grounds that the plaintiffs claim is time-barred by the two-year statute of limitations contained in the policy and mandated by G.L.c. 175, §99. In particular, the defendant asserts the plaintiffs fire loss occurred on March 5, 2001, and suit was not filed until July 15, 2003, more than two years after the loss. The defendant also argues no issues of material fact give rise to an argument for extending the limitations period based on estoppel or waiver.
In response, the plaintiff asserts that: (1) the code upgrade claim has not accrued because the need for and amount of any upgrades are still undetermined, and therefore the limitations period has not begun to run; (2) the claim for code upgrades was made a part of the policy reference process that resulted in a decision on the value of the structural damage, and since the upgrades are as yet unascertained, the reference hearing was suspended for further consideration of said claim, for which the limitations period is tolled; or (3) the defendant is estopped to defend on the basis of the limitations period.
Fire insurance policies written in Massachusetts must conform to the standard form set forth in G.L.c. 175, §99, which provides, in pertinent part:
No company shall issue policies or contracts which . . . insure against loss or damage by fire ... to property or interests in the commonwealth, other than those of the standard forms herein set forth
Nothing herein contained shall authorize any addition or modification of any of the provisions of said standard form relative to ... a cancellation of the policy, a reference of the amount of a loss to three referees or the limitation of actions or suits . . .
In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men . . . and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss . . .
No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties . . .
G.L.c. 175, §99 (emphasis added).
a. Running of Statute of Limitations
First, the plaintiff argues the code upgrade claim has not accrued because the need for, and amount of any upgrades is still undetermined. Thus, the limitations period has not begun to run.
Pursuant to G.L.c. 175, §99, the plaintiffs insurance policy contained the requisite provision concerning a two-year statute of limitations. Thus, the key issues before the court are (1) when the “loss occurred” and (2) when the plaintiff filed suit. In determining when the loss occurred, the court must first determine what the loss was in the case at bar. The defendant argues the loss was the fire on March 5, 2001 and because the current claim was filed more than two years after that date, the limitations period expired. In its opposition, however, the plaintiff asserts a material issue of fact exists as to whether the statute of limitations as to nonstatutory, additional provisions of the policy, i.e., code upgrades, begins to run on the same date that the loss occurred. The plaintiff argues its contractual rights for code upgrades are dependent on actual expenditures for work required by city and state authorities and because these expenditures have yet to take place, the plaintiff remains unable to claim actual expenditures.
Massachusetts case law establishes when a loss occurs triggering coverage under a fire or property insurance policy. “[C]ourts have consistently interpreted the word ‘loss’ to mean the fire or incident causing the damage to the property.” Nunheimer v. Cont’l Ins. Co., 68 F.Sup.2d 75, 78 (D.Mass. 1999) (determining loss is incident giving rise to claim for insurance benefits). See also Gallant v. Fed. Mut. Ins. Co., 354 Mass. 146, 147 (1968) (referring to damage to store contents by motor vehicle as the “loss”); Batsford v. Farm Family Mut Ins. Co., No. 03743 (Middlesex Super.Ct. March 26, 1996) (Cowin, J.) (5 Mass. L. Rptr. 170) (finding plaintiffs loss occurred on date of fire).
Additionally, Massachusetts state and federal courts have consistently granted summary judgment to defendants on statute of limitations grounds when plaintiffs, who were issued fire or property insurance *523 policies by the defendants, bring suit more than two years after the two-year statute of limitations expired. J.& T. Enters., Inc. v. Liberty Mut. Ins. Co., 384 Mass. 586, 587-90 (1981) (barring suit brought more than two years after insured’s property was damaged by fire); Batsford, No. 03743 (Middlesex Super.Ct. March 26, 1996) (Cowin, J.) (granting summary judgment to defendant when plaintiff sued for fire damage more than a year after expiration of statute of limitations). See also Nunheimer, 68 F.Sup.2d at 79 (granting summary judgment to defendant where suit brought more than two years after loss occurred). Moreover, the Supreme Judicial Court made clear in J.& T. Enters., Inc. that “[s]ection 99 of G.L.c. 175 . . . states broadly that no action for recovery of any claim by virtue of the policy shall be sustained unless brought within two years from the time the loss occurred.” 384 Mass, at 588. Thus, if the plaintiffs claim and lawsuit would have been non-existent but for the insurance policy, the claim and lawsuit arise “by virtue of the policy,” and the two-year statute of limitations applies. Batsford, No. 03743 (Middlesex Super.Ct. March 26, 1996) (Cowin, J.), citing J. & T. Enters., Inc., 384 Mass. at 588.
In this case, no genuine issues of material fact exist concerning the fact of the fire and coverage by the defendant under a fire insurance policy, including coverage for “code upgrades.” Also, with the exception of “code upgrades,” no issue exists concerning the extent of structural damage or the extent of damage to contents of the building because they have been already resolved. The decision of the three-member reference panel, issued on September 11, 2002, under the policy’s provisions resolved the structural damage claim, and a settlement between the parties in October 2002 resolved the contents claim. Moreover, the record establishes that, to date, no city or state inspectors have given orders concerning code upgrades, nor does the plaintiff currently know the need for, or cost of any such upgrades that may be required if the church is eventually repaired.
The insurance policy at issue contains a two-year limitations period “from the time the loss occurred” for the filing of suit against the insurer “for the recovery of any claim by virtue of this policy,” consistent with G.L.c. 175, §99. While code upgrade coverage is not expressly mandated by said statute, the coverage comes within the fire coverage of the policy, as opposed to other forms of non-fire related coverage in comprehensive commercial policies. The defendant relies upon two cases decided in this court to counter the plaintiffs contention that a material issue of fact exists as to whether the statute of limitations as to additional, nonstatutoiy provisions of the policy begins to run on the same date that the loss occurred. See Faustman v. Commerce Ins. Co., No. 02303 (Middlesex Super.Ct. July 5, 2000) (Sosman, J.) (12 Mass. L. Rptr. 264) (rejecting argument that two-year limitations period is inapplicable because policy contained additional coverage beyond that mandated by standard form fire policy); Tricentennial Eagle Ltd. P’ship v. Bankers Standard Ins. Co., No. 00463 (Essex Super.Ct. July 24, 1997) (Grasso, J.) (7 Mass. L. Rptr. 367) (same). Additionally, the defendant cites Goldsmith v. Reliance Ins. Co., 353 Mass. 99 (1967), which held that the apparent conflict between sections 22 and 99 of G.L.c. 175 has been resolved consistently by bringing non-mandatoiy coverages in a fire policy within the two-year limitation period required by section 99. Id. at 102.
A stronger case, however, can be made herein that the limitations period of G.L.c. 175, §99 applies to the facts at bar, rather than solely a policy limitations period. The policy itself states:
Massachusetts law requires that the Suit Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy supersede any similar provisions contained in your policy. Therefore, all LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions contained in your policy are void. The Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy shall apply instead . . .
Thus, whether the coverage is mandated by statute or simply contractual, the two-year period for suits has been held enforceable. See Batsford, No. 03743 (Middlesex Super.Ct. March 26, 1996) (Cowin, J.), citing J.&T. Enters., Inc., 384 Mass, at 588.
Finally, even more compelling is the language of the policy itself which grants coverage for “direct physical loss of or damage to covered property at the premises described in the declarations caused by or resulting from any covered cause of loss.” The policy’s conditions required the plaintiff to bring “the action . . . within 2 years after the date on which the direct physical loss or damage occurred.” The two-year limitations period begins to run from the date of the fire, not a future date during the reconstruction process, which might reveal to a municipal inspector the need for a code upgrade; the fire caused the direct physical loss, and not any action by a municipal inspector. Gallant, 354 Mass, at 147; Batsford, No. 03743 (Middlesex Super.Ct. March 26, 1996) (Cowin, J.); Nunheimer, 68 F.Sup.2d at 78. Thus, as a matter of law, a claim for code upgrade coverage does not obtain the benefit of a tolling of the limitations period under a later discovery rule or accrual theory. Nunheimer, 68 F.2d at 77-78, and cases cited therein. As such, this suit is time-barred by the two-year statute of limitations because the plaintiff filed the suit after the limitations period had run.
b. Reference Hearing
Alternatively, the plaintiff contends the code upgrade claim was part of the policy reference process, but because the upgrades were unascertained at the time of the hearing, the hearing was suspended for *524 further consideration of said claim, and the limitations period was tolled. The plaintiff asserts that through counsel it requested the reference proceeding be suspended and reconvened should it become necessary; on August 22, 2002, the Chairman of the three-member panel suspended the hearing; and the defendant made no objection.
G.L.c. 175 provides that the referees will “meet to hear the evidence in the case,” and “(t]hey may adjourn the hearing from time to time but not more than one week shall elapse between hearings except by unanimous agreement of said referees.” G.L.c. 175, §101. Thus, pursuant to G.L.c. 175, §101, if the referees suspended the hearing for purposes of a later consideration of a code upgrade claim, then the policy limitations period would be tolled, again subject to a timeliness issue.
In this case, the policy, again as mandated by G.L.c. 175, §99, allows for a tolling of the limitations period if the insured initiated the reference process timely, which the plaintiff generally did.[1] The parties disagree as to whether they formally presented the “code upgrades” claim to the reference panel and whether the reference panel and the parties agreed to suspend the hearing for later presentation of such a claim, however, the parties agree that neither they, nor the referees, expressly stated that the reference hearing was convened and/or suspended for purposes of consideration of the code upgrade claim, or any claim other than the contents claim of the plaintiff. Instead, the plaintiff simply relies upon inference from the fact that code upgrades were discussed as possibilities during the reference hearing, but that the need for, and cost of such upgrades, if needed, were as yet unascertained. The record fails to show, however, that either party asked the reference panel to directly consider or suspend the proceeding for later presentation of a code upgrade claim. Moreover, a reading of the final pages of the reference hearing transcript makes clear that the hearing was suspended pending the parties’ resolution of the contents claim only. The Chairman of the panel stated; “If you want to keep the panel in place because of the disadvantage of the — or you can give a timeframe. If there is a potential disagreement on the contents within a particular timeframe, it comes back to this panel.” Feener responded, “Correct.” Therefore, no genuine issue of material fact exists concerning the suspension of the reference hearing. The hearing was suspended, but only for necessitating a possible resolution of the contents claim; it clearly was not suspended for purposes of a “code upgrades” claim. Furthermore, the parties resolved the contents claim in October 2002, and as such, the reference panel was never reconvened because it was unnecessary to do so.
c. Estoppel
Finally, the plaintiff argues the defendant is es-topped from raising a limitations defense because substantial evidence exists that the plaintiff relied upon actions of the defendant in not bringing suit with respect to the code upgrade claim; however, nothing in the motion record supports the plaintiffs claim.
Under Massachusetts law, in order to prove estoppel, the plaintiff must establish:
(1) a representation, or conduct amounting to a representation, intended to induce a course of conduct on the part of the person to whom the representation is made, (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made, and (3) a detriment to such person as a consequence of the act or omission.
Riverdale Mills Corp. v. Fireman’s Fund Ins. Co., 123 F.Supp.2d 37, 40 (D.Mass. 2000), citing Tpk. Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992). Additionally, the plaintiffs reliance must have been reasonable. Id.
In this case, the plaintiffs fail to satisfy the first requirement of estoppel. Nothing in the motion record, including all of the references by the parties during the reference hearing or after, reasonably supports a claim that actions of the defendant misled the plaintiff who was represented by a public adjuster and an attorney at all relevant times, into thinking a timely-filed suit would be unnecessary or into sleeping on its rights. The plaintiff presented no evidence of any communications, of any kind, between the parties from the payment of the reference award, in October 2002, and the passing of the two-year limitations period on March 5, 2003. The plaintiffs “substantial evidence” of reliance consists of a phone conversation from its counsel to the defendant’s adjuster in early April 2003 inquiring as to a claim for code upgrades and a follow-up letter written by plaintiff s counsel to the adjuster, dated April 4, 2003. Unfortunately, both the phone call and the letter took place after the statute of limitations had run on March 5, 2003, and consequently, the plaintiff could not have relied upon them in not bringing suit for code upgrades prior to that date. Consequently, the plaintiff failed to provide any support for a claim of estoppel.

ORDER

For the foregoing reasons, the defendant’s Motion for Summary Judgment is ALLOWED.

The relevant portion of the policy states:
Suit No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained . . . unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years,... the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties . ..